# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HOWARD TOWN CENTER DEVELOPER, LLC, | |
| Plaintiff-Counter Defendant, | Civil Action No. 13-1075 (BAH) |
| v. | Chief Judge Beryl A. Howell |
| HOWARD UNIVERSITY, | |
| Defendant-Counter Plaintiff-Third Party Plaintiff, | |
| CASTLEROCK PARTNERS, LLC, | |
| Third Party Defendant. | |

## MEMORANDUM AND ORDER

Upon consideration of the plaintiff Howard Town Center Developer's ("Developer's") Motion to Stay Execution of Judgment and for Approval to Post an Irrevocable Letter of Credit as Security Pending Disposition of the Appeal ("Pl.'s Mot."), ECF No. 134, the memoranda submitted in support and opposition, the exhibits attached thereto, and the entire record herein, the plaintiff's motion is DENIED.[1]

Under Federal Rule of Civil Procedure 62(d), an appellant may obtain an automatic stay of execution of judgment pending the resolution of its appeal by posting a supersedeas bond with the district court. *See* FED. R. CIV. P. 62(d). "The purpose of the supersedeas bond is to secure the appellee from loss resulting from the stay of execution." *Fed. Prescription Serv., Inc. v. Am.*

---

[1] The third-party defendant, CastleRock Partners, LLC, assigned its rights and obligations under the operative agreements to the Developer but has not been released from its obligations to the defendant University. *See Howard Town Ctr. Developer, LLC v. Howard Univ.*, No. 13-1075, 2017 WL 3493081, at *1 n.1 (D.D.C. Aug. 14, 2017); Def.'s Counterclaim & Third-Party Complaint ¶¶ 16–17, ECF No. 15; Pl. & Third-Party Def.'s Mot. Summ. J. at 18 n.2, ECF No. 87. Consequently, the third-party defendant will not be referenced separately when discussing the actions of the parties in this matter.

1

*Pharm. Ass'n*, 636 F.2d 755, 760 (D.C. Cir. 1980). Given that "the stay operates for the appellant's benefit and deprives the appellee of the immediate benefits of his judgment, a full supersedeas bond should be the requirement in normal circumstances, such as where there is some reasonable likelihood of the judgment debtor's inability or unwillingness to satisfy the judgment in full upon ultimate disposition of the case and where posting adequate security is practicable." *Id.* (footnote omitted).

Rule 62 "in no way necessarily implies that filing a bond is the only way to obtain a stay," *id.* at 759, however, and "the district court ha[s] broad discretion to determine the type of security needed," *So v. Suchanek*, 670 F.3d 1304, 1309 (D.C. Cir. 2012). Although the court has discretion to depart from the usual requirement of a supersedeas bond for the full amount of judgment, the burden is "on the moving party to objectively demonstrate the reasons for such a departure." *Grand Union Co. v. Food Emp'rs Labor Relations Ass'n*, 637 F. Supp. 356, 357 (D.D.C. 1986) (quoting *Poplar Grove Planting & Refining Co. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1191 (5th Cir. 1979)). "If a judgment debtor objectively demonstrates a present financial ability to facilely respond to a money judgment and presents to the court a financially secure plan for maintaining that same degree of solvency during the period of an appeal, the court may then exercise a discretion to substitute some form of guaranty of judgment responsibility for the supersedeas bond." *Athridge v. Iglesias*, 464 F. Supp. 2d 19, 24 (D.D.C. 2006) (quoting *Poplar Grove*, 600 F.2d at 1191).

Here, the Developer has not carried its burden of objectively demonstrating why a departure from the normal requirement of a full supersedeas bond is warranted. Nor has the Developer demonstrated a "present financial ability" to respond to a money judgment or presented a "financially secure plan" for maintaining solvency pending appeal. *Id.* The only

reason the Developer cites in support of its proposed form of security, rather than the norm of a supersedeas bond, is that an irrevocable letter of credit will avoid "the needless additional expense of a bond." Pl.'s Mot. ¶ 16. The Developer has not stated the price differential between a supersedeas bond and its proposed letter of credit or explained why that saving, on its own, is reason to depart from the norm.[2]

Nor has the Developer "demonstrate[d] a present financial ability to facilely respond to a money judgment." *Athridge*, 464 F. Supp. 2d at 24 (internal quotation marks omitted). Indeed, the Developer's actions in the wake of this Court's initial grant of summary judgment, as well as its representatives' subsequent trial testimony, show more than "some reasonable likelihood of the judgment debtor's inability or unwillingness to satisfy the judgment in full" in the event the judgment is affirmed. *Fed. Prescription Serv.*, 636 F.2d at 760.

Specifically, during this litigation, the Developer deposited $1,475,000—the amount of the ground lease payment—into an escrow account with Closeline Settlements. *Howard Town Ctr. Developer, LLC v. Howard Univ.*, No. 13-1075, 2017 WL 3493081, at *34 (D.D.C. Aug. 14, 2017). After this Court granted summary judgment to the University, the Developer filed an appeal to the D.C. Circuit but did not seek a supersedeas bond or stay of execution of judgment. See Def.'s Mot. Suppl. Rec. App. at 3 n.1, ECF No. 64. To satisfy its judgment against the Developer, the University filed an application, on January 3, 2014, for a writ of attachment for

---

[2] In arguing that the Developer has not established good cause to waive the standard bond requirement, the University relies primarily on *Evolution v. Sun Trust Bank*, No. Civ.A.01-2409, 2005 WL 1041348 (D. Kan. Jan. 10, 2005). That decision employed a five-factor test for deciding whether to waive the requirement of a full supersedeas bond: "(1) the complexity of the collection process; (2) the amount of time required to obtain a judgment; (3) the degree of confidence that the district court has in the availability of funds to pay the judgment; (4) whether the defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money; and (5) whether the defendant is in such a precarious financial situation that the requirement to post a bond would place other creditors of the defendant in an insecure position." *Id.* at *1. Here, the question is not whether to grant a stay without security or to lessen the amount of the bond but whether an alternative form of security may be substituted for a bond. *See* Pl.'s Mot. ¶ 1. No similar test has been applied in answering this question.

the $1,475,000 held by Closeline. *Howard Town Ctr. Developer*, 2017 WL 3493081 at *35. The writ was issued by the Clerk of this Court on January 6, 2014, and served on Closeline on January 8, 2014. *Id.* The funds were unable to be attached to satisfy the judgment, however, because, at the Developer's direction, Closeline returned the $1,475,000 to the Developer on January 6, 2014, the same date the writ had been issued. *Id.*

Closeline produced a copy of the check returning the $1,475,000 to the Developer, showing that Eagle Bank—the same institution that the Developer asserts will issue the letter of credit that it seeks as alternate security—had remitted the funds "into the Developer's account with Industrial Bank." *Id.* at *35 n.20; *see also* Def.'s Opp'n Pl.'s Mot. Stay ("Def.'s Opp'n") at 7 & n.4, ECF No. 138. The University then served a writ of attachment on Industrial Bank, and the Bank explained that the Developer had transferred those funds to Property Management Account Services, LLC ("PMAS"), an affiliate of the Developer. *Howard Town Ctr. Developer*, 2017 WL 3493081 at *35 n.20. The University then deposed PMAS, and PMAS's deponent—Eric Siegel, the Vice Manager of Howard Town Center Developer, LLC—testified that "the funds on deposit with Closeline Settlements were the property of PMAS (not the Developer) and PMAS had never relinquished its ownership of those funds." *Id.* Nonetheless, the Developer had touted, "to the University and to this Court, the funds in the Closeline account as a reason for the University to continue its relationship with the Developer, prior to its decision to hand off those funds to PMAS, as it has done in other cases." *Id.* at *56. Given the Court's finding that "[t]he University reasonably could have assumed that a party acting in good faith and under the microscope of litigation would not have acted so blatantly to evade a judgment against it," *id.*, "some reasonable likelihood" exists that the judgment debtor would be similarly unable or unwilling to satisfy the judgment this second time, *Fed Prescription Serv.*, 636 F.2d at 760.

4

Finally, the Developer also has not presented the Court with a "financially secure plan" for maintaining solvency during the period of the appeal. At trial, Siegel testified that in terms of having to pay a judgment against the University, this litigation was risk-free and that the Developer "ha[d] no money in its bank account" with which to satisfy any judgment against it. Trial Tr. Day 5 PM at 26:21–25, 27:13–16, ECF No. 124; *see also Howard Town Ctr. Developer*, 2017 WL 3493081 at *41 ("[T]he Developer knew, and the University likely surmised, that a lawsuit against the Developer would have been an exercise in futility, given that the Developer's status as an LLC holding no funds to satisfy its $1,475,000 obligation to the University rendered it practically judgment-proof."). Given this Court's previous finding that the Developer is "an inadequately capitalized shell company," *Howard Town Ctr. Developer*, 2017 WL 3493081 at *41 n.22, and the lack of evidence that the Developer has remedied that status, the Developer's inability or unwillingness to satisfy the judgment is of great concern.

In this case, the Developer has not carried its burden of objectively demonstrating reasons for granting a stay without the usual requirement of a full supersedeas bond. Rather, the Developer's past conduct provides good reason to suspect otherwise. Accordingly, it is hereby

**ORDERED** that the Developer's motion is DENIED.

**SO ORDERED.**

Date: December 8, 2017

_____
BERYL A. HOWELL
Chief Judge